IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| **JEFFREY D. VINSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 3:13-cv-01001** |
| | ) | |
| **v.** | ) | **Judge Nixon** |
| | ) | **Magistrate Judge Griffin** |
| **FERGUSON ENTERPRISES, INC.,** | ) | |
| | ) | **JURY DEMAND** |
| **Defendant.** | ) | |

**ORDER**

Plaintiff Jeffrey D. Vinson alleges that Defendant Ferguson Enterprises, Inc. ("Ferguson") racially discriminated against him in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.SC. § 1981, and the Tennessee Human Rights Act, T.C.A. § 4-21-101. (Doc. No. 8.) Pending before the Court is Ferguson's Motion for Summary Judgment ("Motion"). (Doc. No. 23.) For the reasons set forth herein, Defendant's Motion is **GRANTED**. The Clerk of the Court is **DIRECTED** to close the case.

## I. BACKGROUND

### A. Factual Background[1]

Ferguson is a distributor of residential and commercial plumbing and HVAC products. (Doc. No. 23-1 ¶ 3.) Specifically, Ferguson sells water heaters, pumps, pipes, valves, fittings, faucets, fixtures, and accessories. (*Id.*) Ferguson has over 1,300 locations, including several in Middle Tennessee. (*Id.*) The company often hires entry-level employees through its management trainee program, wherein Ferguson recruits students out of college and puts them

[1] Unless otherwise indicated, the facts in this section are taken from Plaintiff's amended complaint (Doc. No. 8) and Plaintiff's Response to Defendant's Statement of Undisputed Material Facts (Doc. No. 29). Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. *Duchon v. Cajon Co.*, 791 F.2d 43, 46 (6th Cir. 1986).

on a track to become managers. (*Id.* at ¶ 4.) The typical promotion trajectory for trainees is to start in the warehouse and then move to the counter. (*Id.*) If trainees perform well in the first two stops, they are eligible to then move to "inside sales"—performing bids and offering quotes to customers at the branch locations—and eventually to "outside sales," where they network with potential customers off-site in an attempt to create new business. (*Id.* ¶¶ 5–6.) Finally, after working in outside sales, trainees qualify as candidates for Branch Manager. (*Id.* ¶ 7.)

Ferguson hired Plaintiff Jeffrey D. Vinson as a trainee in 1999, when Vinson was a recent college graduate, and started him at a salary of $28,000 per year. At the time, he had no relevant experience. In 2004, Ferguson promoted Vinson to Franklin Branch Manager and increased his salary to $42,000 per year, plus bonuses. Ferguson contends that Branch Manager salaries are set based on a matrix established by the corporate office, including relevant experience and the revenue volume of the store. Vinson followed the traditional track with one exception: After working in the warehouse, at the counter, and in inside sales, he bypassed outside sales and was promoted directly to Branch Manager. (*Id.* ¶ 11.) At that time, David Brandt was the General Manager in Middle Tennessee; Brandt decided to promote Vinson to Branch Manager because Vinson "was trustworthy, had passion, and customers liked him." (*Id.*)

Brandt—who was promoted to District Manager in 2005—and his replacement as General Manager, Jeff Hargis, claim that they found Vinson's performance as Branch Manager satisfactory, but that while he "has a great personality and is well liked by employees and customers," he was not a "hard charger." (*Id.* ¶ 16.) Specifically, Hargis believed that the Franklin branch did not enjoy robust growth while Vinson was Branch Manager because Vinson "is not comfortable getting out of the store to build new business. . . . [He] is actually performing

more of a 'counter manager' role rather than a full Branch Manager role because he is not out generating new business and expanding his market share." (Doc. No. 23-4 ¶ 15.)

In late 2010, Hargis learned that an industry veteran, Kent Hodges, planned to leave one of Ferguson's largest competitors in Middle Tennessee, Kenny Pipe and Supply ("Kenny"). (Doc. No. 23-4 ¶ 21.) Hodges had been a Branch Manager with Kenny for thirty years and once was responsible for eight stores throughout Middle Tennessee and Alabama. (Doc. No. 23-5 ¶ 2.) Hargis hired Hodges to an unspecified, business-development role with Ferguson; Hargis harbored high expectations that Hodges would be able to identify opportunity for growth due to his decades of experience and plethora of industry contacts. After some negotiating, Hodges accepted a salary of $130,000 per year. (Doc. No. 23-4 ¶ 21.)

In August 2011, Brandt and Hargis transferred Vinson to a Residential Sales Manager position. They claim that they hoped the move would benefit Vinson by giving him the outside sales experience that he lacked. (Doc. No. 23-1 ¶ 18; Doc. No. 23-4 ¶ 17.) By the time of the transfer, Vinson's salary was $69,000 plus bonuses. (Doc. No. 23-4 ¶ 18.) Hargis decided to fill the now-vacant Franklin Branch Manager position with Hodges in the hope that Hodges would leverage his wealth of experience and connections to take the Franklin branch to the next level. In September of 2012, however, Hargis terminated Hodges because Hodges had failed to live up to expectations.

Hodges's termination again left the Franklin Branch Manager position vacant, and Hargis decided to transfer Vinson back into the role. (Doc. No. 23-4 ¶ 20.) Hargis avers that Vinson, unsatisfied with the Residential Sales Manager position, was overjoyed to hear the news. (*Id.*) Ferguson increased Vinson's base salary to $79,000 in August 2012 and $80,400 in August

2013, though Hargis claims that Vinson's productivity still suffers from the same unwillingness to grow new business outside the branch. (Doc. No. 23-4 ¶ 20.)

**B. Procedural Background**

Vinson filed his Amended Complaint on November 11, 2013. (Doc. No. 8.) Defendant filed its Motion for Summary Judgment on September 12, 2014 (Doc. No. 23), along with a Memorandum in Support (Doc. No. 24), six exhibits (Doc. Nos. 24-1–8), and a Statement of Undisputed Material Facts (Doc. No. 24-8). Plaintiffs filed a Response on October 10, 2014 (Doc. No. 28), with three exhibits (Doc. No. 28-1–3), and a Response to Defendant's Statement of Undisputed Material Facts (Doc. No. 29). Defendants filed a Reply (Doc. No. 30) with one exhibit (Doc. No. 30-1) on October 23, 2014.

## II. STANDARD OF REVIEW

Summary judgment is rendered when "there is no genuine dispute as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must demonstrate that the non-moving party has failed to establish a necessary element of that party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment will be granted if "the evidence is so one-sided that one party must prevail as a matter of law." *Lexington-South Elkhorn Water Dist. v. City of Wilmore*, 93 F.3d 230, 233 (6th Cir. 1996). The movant has the initial burden of informing the district court of the basis for the summary judgment motion and identifying portions of the record that lack a genuine issue of material fact. *See Celotex*, 477 U.S. at 323.

The non-moving party may not rest solely on the allegations in the complaint, but must delineate specific evidence that shows there is a genuine issue for trial. *See id.* at 324. A "mere possibility" of a factual dispute is not sufficient to withstand a properly supported motion for

summary judgment. *Baird v. NHP Mill Creek Apartments*, 94 F. App'x 328, 330-31 (6th Cir. 2004) (quoting *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). A dispute about a material fact is genuine if a reasonable factfinder could find for the non-moving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A party asserting or denying that a fact is genuinely disputed may support its position by (1) citing to particular parts of materials in the record, (2) showing that the materials cited by the opposing party do not establish the absence or presence of a genuine dispute, or (3) showing that an adverse party cannot produce admissible evidence to support a fact. Fed. R. Civ. P. 56(c)(1).

All reasonable inferences are to be drawn in favor of the non-moving party and the evidence of the non-movant is to be believed. *Anderson*, 477 U.S. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . on a motion for summary judgment." *Id.* If the court determines that a reasonable factfinder could not find for the non-moving party, summary judgment must be granted. *See Lexington-South Elkhorn Water Dist.*, 93 F.3d at 233.

## III. LEGAL ANALYSIS

Vinson alleges that Ferguson engaged in discriminatory pay practices based upon his race, African-American, in violation of Title VII, the THRA, and Section 1981. The standard of analysis for Title VII, THRA, and Section 1981 claims is identical. *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010); *Reed v. Delta Air Lines, Inc.*, 19 F.3d 19, at *3 (6th Cir. 1994) (unpublished table decision); *Versa v. Policy Studies, Inc.*, 45 S.W.3d 575, 580 (Tenn. Ct. App. 2000) (holding that Tennessee courts apply federal court title VII analysis to cases brought under the THRA). The Court will therefore analyze the claims together.

To establish a claim of unequal pay for equal work under Title VII, a plaintiff has the burden to prove that the employee "pays different wages to employees of [different races] 'for equal work on jobs the performance of which requires equal skill, effort and responsibility, and which are performed under similar working conditions.'" *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974); *see also Odomes v. Nucare, Inc.*, 653 F.2d 246, 250 (6th Cir. 1981) ("The analysis of unequal pay for equal work is essentially the same under both the Equal Pay Act and Title VII."). Once a plaintiff has established a prima facie case, the burden shifts to the employer to show that the wage differential is justified under one of the Equal Pay Act's four affirmative defenses: "(1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production; or (4) any other factor other than [race]." *Buntin v. Breathitt Cnty. Bd. of Educ.*, 134 F.3d 796, 799 (6th Cir. 1998).

Vinson contends that he can establish a prima facie case because he performed equal work "on jobs the performance of which require equal skill, effort, and responsibility, and which are performed under similar working conditions" as Hodges, a white counterpart who held the same position (Doc. No. 28 at 22–25). *Corning Glass Works*, U.S. 188 at 195. Ferguson counters with several differences between Vinson and Hodges, including: (1) Hodges was initially hired into a different role, one that Vinson has never performed; and (2) Hodges's extensive experience and contacts within the industry. (Doc. No. 24 at 18–19.) *See Moore*, 2013 WL 6550434 at *13 (holding that employees can have the same title and the same general duties and not meet two textual touchstones of the EPA—equal skills and equal responsibility). Ferguson also points out that although Hodges did not meet the company's lofty expectations for him, he did increase sales revenue by $600,000 during his short tenure, an achievement that Vinson never managed. (Doc. No. 23-4 ¶¶ 16, 25.)

Vinson's counterarguments are, to be charitable, unpersuasive and contradictory. First, Vinson seems to admit that he was not performing "the same job, to the same level and the same economic value" as Hodges, but ascribes this differential to Vinson not being given the same opportunities—namely, that Vinson skipped the outside sales portion of the trainee track. (Doc. No. 28 at 23.) Second, Vinson posits that Ferguson's claims of Hodges's greater qualifications and Vinson's inadequate level of performance are pretextual because (1) Ferguson admits that Vinson was well-liked and affable and (2) Ferguson chose to rehire Vinson for the Branch Manager position after terminating Hodges. (*Id.* at 24–26.) Lastly, Vinson bizarrely contends that Brandt and Hargis intentionally set him up to fail by bringing him back to the same position, knowing that he was not ready to handle the responsibilities. (*Id.* at 26.)

The Court concludes that Vinson has failed to meet his burden of establishing a prima facie case because he has not presented evidence of equal duties and responsibilities. First, Vinson does not dispute that Hodges and Vinson performed different duties. *See Day v. Krystal Co.*, 471 F. Supp. 2d 874, 891–92 (E.D. Tenn. 2007) (holding that a plaintiff failed to establish a prima facie case for unequal pay where her alleged comparators performed different functions). Although their job titles were, for a time, the same, Hodges sought outside business from potential clients and was held to a higher standard of performance; when Hodges failed to boost sales revenue by $2 to $3 million, he was terminated. Second, Vinson does not dispute that Hodges received a higher salary because he was considered more skillful and knowledgeable due to his decades of experience in the business, thus they did not have equal skills. In short, Vinson has failed to mount any challenge to Ferguson's simple and nondiscriminatory narrative: Vinson performed adequately, but was transferred to boost his outside sales repertoire; Hodges—a major player in the industry—was brought in with much fanfare to develop more business before

replacing Vinson; and then Vinson was rehired to the position after Hodges proved to be less than a superstar. Ferguson's admiration of Vinson's genial demeanor and decision to rehire him are not an indication that it considered him as valuable to the company as Hodges.

Even if a reasonable jury could conclude that Vinson can establish a prima facie case, Ferguson has met its burden to show that it did not set its salaries based upon factors other than race. Considerations like more prior experience and industry knowledge fall squarely within the Equal Pay Act's four affirmative defenses. *See, e.g.*, *Smallwood v. Jefferson Cnty., Ky.*, 95 F.3d 1153 (6th Cir. 1996) (finding no violation of the EPA where employer's decision to pay a higher salary was due to market conditions, the candidate's credentials, and the need to attract a well-qualified candidate). Moreover, Vinson completely failed to address Ferguson's contention that it sets salaries for other white Branch Managers based on revenue volume. *See, e.g.*, *Douglas v. Mitzelfeld's, Inc.*, 8 F. Supp. 2d 650, 655 (E.D. Mich. 1997) (finding that employee's higher sales volume was a legitimate nondiscriminatory reason set forth by retail store defendant for difference in employees' pay).

## IV. CONCLUSION

For the above-stated reasons, the Court **GRANTS** Ferguson's Motion for Summary Judgment. (Doc. No. 23.)

It is so ORDERED.

Entered this 20th day of May, 2015.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT



Case 3:13-cv-01001 Document 42 Filed 05/20/15 Page 8 of 8 PageID #: 753